IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FILED**
**DEC 0 5 2023**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 1:17 CR 00083 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| OMAR S. WILLIAMS, | ) | REPLY TO GOVERNMENT'S RESPONSE |
| | ) | IN OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |

COMES Defendant, Omar S. Williams ("Williams"), appearing *pro se* and files his Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release, and would show as follows:

## PRELIMINARY STATEMENT

As a preliminary matter, Williams respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION

The thirteen (13) page Government's Response in Opposition to Defendant's Motion for Compassionate Release ("GR") is divided into four main sections; (I) Procedural History; (II) Legal Standards for Compassionate Release Motions; (III) Williams Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction and He Poses a Danger to Public Safety; and (IV) Conclusion. Williams will reply sequentially to each main sections and their respective subsections as follows:

## I.     Procedural History

Williams does not object or take exception to the section of the GR.

## II.    Legal Standards for Compassionate Release Motions

Incredibly, it is hard to image that the government knowing that USSG Amendment 814 is now effective continues to rely on the old, outdated USSG § 1B1.13 Guideline regarding compassionate release. Williams objects. The government spends considerable time replowing old fields that are not applicable since Amendment 814 became effective on November 1, 2023.

According to the government, "Although the government believes, notwithstanding the First Step Act amendments, that the Commission's policy statement set forth in U.S.S.G. § 1B1.13 should be deemed 'applicable' based on principles of statutory construction and logic regardless of whether the Bureau of Prisons ('BOP') or an inmate files the compassionate-release motion, the government acknowledges that the Sixth Circuit and others have concluded otherwise." GR at 4-5. This main section of the GR should be struck because it is not relevant since Amendment 814 because effective.

## III.   Williams Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction and He Poses a Danger to Public Safety

In this subsection, the government contends that "Williams' Motion should be denied for two reasons. First, he has not identified 'extraordinary and compelling reasons' for that reduction within the meaning of Section 3582(c)(1)(A) and the Sentencing Commission's policy statement. Second, the statutory sentencing factors do not weigh in favor of his release." GR at 7. This main section is divided into five (5) subsections. Williams objects to each subsection for the reasons below:

2

A. Williams' Sentencing Disparity Does Not Present an Extraordinary and Compelling Reason.

The government's argument centers around the assertion that Williams' request for compassionate release based on a nonretroactive change in sentencing law is not valid. Williams objects. The government points out that, according to the Sixth Circuit's position en banc, nonretroactive changes in sentencing law cannot be considered "extraordinary and compelling reasons" for compassionate release. The government relies on *United States v. McCall*, 29 F.4th 816 (6th Cir. 2022)(en banc) to support this stance, emphasizing that nonretroactive legal developments should not factor into the analysis at all.

While the government presents a clear interpretation of the Sixth Circuit's position, it's important to consider alternative viewpoints that may challenge this perspective. Compare *McCall*, 56 F.4th at 1048, 1055 with *United States v. Chen*, 48 F.4th 1092, 1098-99 (9th Cir. 2022); *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022), *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021), and *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). Obviously, there is a circuit split on this issue. These cases were all decided before Amendment 814 became effective on November 1, 2023.

1. Contradictory Decisions in the Sixth Circuit

The government itself acknowledges that there are conflicting decisions within the Sixth Circuit regarding the consideration of nonretroactive changes in sentencing law for compassionate release. The fact that appellate courts have produced conflicting decisions, as cited in the argument, suggests that there is no unanimous agreement on this matter. Further, USSG Amendment 814 expanded the list of "extraordinary and compelling reasons" in five ways to better account for the

3

plain language of section 3582(c)(1)(A) and its legislative history, to reflect the reasons relied upon by many courts after passage of the First Step Act in the absence of a binding policy statement, and to account for recent experiences—including those pertaining to the pandemic. Amendment 814 policy statement indicates that district courts "may" consider changes in law as part of the "extraordinary and compelling" reasons analysis, but "only" after "full[y] consider[ing]" the prisoner's "individualized circumstances." See U.S.S.G. § 1B1.13(b)(6)(a) (2023). See, e.g., *United States v. Bethea*, 54 F.4th 826, 833 n.2 (4th Cir. 2022) (noting "that § 3582(c) does not prevent prisoners from filing successive motions"). Of most serious moment is (5) which adds an "Unusually Long Sentences" category, permitting consideration of non-retroactive changes in law in a narrow set of circumstances including disparity in sentencing.

2. Evolution of Legal Standards

Legal interpretations and standards can evolve over time. The fact that there is a division among appellate courts indicates that the question of whether nonretroactive changes in sentencing law can be deemed "extraordinary and compelling reasons" is not settled. Williams argues that legal perspectives and societal attitudes towards certain offenses shift over time, influencing what is considered just and fair.

3. Individual Circumstances

The government's argument seems to adopt a rigid stance that nonretroactive legal developments should never be considered. However, each case is unique, and individual circumstances should be taken into account. The nature of Williams' conviction and the specifics of his case stated in his motion make it an exceptional situation where the application of the nonretroactive change in sentencing law is justified.

4

4. Fairness and Equity

Williams also emphasizes the principles of fairness and equity in the legal system. Further, the nonretroactive change in sentencing law addresses an injustice or disparity, these principles should override a strict interpretation of the en banc decision.

In summary, while the government relies on the en banc decision in *McCall* to support its position, there are many counter arguments that highlight the unsettled nature of this issue within the Sixth Circuit, the evolving nature of legal standards, the uniqueness of individual cases, and the overarching principles of fairness and equity. Williams objects and challenges the government's assertion that nonretroactive changes in sentencing law should be categorically excluded from compassionate release considerations.

B. Williams' Claim of Sentencing Disparity Does Not Present an Extraordinary and Compelling Reason under the November 1, 2023, Sentencing Commission Amendments.

Williams objects to the government's above contention. The government's argument against granting compassionate release to him based on the recent amendments to the sentencing guidelines raises several concerns:

1. Arbitrary Time Requirement in Subsection (b)(6)

The requirement that a defendant must serve at least 10 years of their sentence before a change in law can be considered as extraordinary and compelling is arbitrary. The focus should be on the nature of the sentence and its impact rather than an arbitrary time limit. Williams has been in custody since February 6, 2017, and it is unfair to deny him relief simply because he has not reached the 10-year threshold. The focus should be on the "unusually long" nature of the sentence and the gross disparity it creates, not on a specific duration of incarceration.

5

### 2. Limitations of Subsection (c)

Subsection (c) seems to limit the consideration of a change in law for compassionate release purposes to cases where extraordinary and compelling reasons exist independently of a change in law. This limitation is overly restrictive and may prevent deserving cases, like Williams', from being considered properly.

Williams argues that the change in law is, in fact, an extraordinary and compelling reason, and the subsection should not be interpreted to exclude such cases. The government's interpretation is overly narrow and does not take into account the unique circumstances of individual cases.
Sixth Circuit's Ruling and Fairness:

Referring to Williams' previous attempt to present the argument as a §2255 motion, and preventing him from doing so, raises concerns about fairness and access to justice. The denial of a previous motion should not be used as a blanket justification for denying any subsequent motion. The circumstances may have changed, and the recent amendments to the sentencing guidelines should be considered as new evidence that could have a significant impact on the determination of an extraordinary and compelling reason for a sentence reduction.

### 3. Focus on Substance Rather Than Procedure

Moreover, the government's argument seems to focus on procedural aspects and technicalities rather than the substance of Williams' case. The goal of compassionate release is to address cases where the original sentence imposes an undue and unfair burden on the defendant, and this should be the primary consideration.

6

4. Broader Perspective on Extraordinary and Compelling Reasons

Furthermore, the concept of "extraordinary and compelling reasons" should be interpreted broadly, taking into account the totality of circumstances in each case. The government's narrow interpretation limits the flexibility and discretion that should be afforded to the courts in evaluating the fairness of a sentence.

In conclusion, the government's argument relies on rigid interpretations of the amendments and procedural history, which may not adequately address the unique circumstances of Williams' case. Williams should be given a fair opportunity to present his case based on the recent changes in the law and the potential impact on the fairness of his sentence.

C. Williams' Prior Trafficking Offense is a Predicate Offense for his Career Offender Status.

Williams objects to the government's above statement as follows:

1. Interpretation of *Mathis v. United States* (2016)

Williams challenges the government's interpretation of *Mathis v. United States*. Williams' analysis is valid and government's dismissal of his argument as "without merit" lacks a substantive rebuttal.

Under the Supreme Court's holding in *Mathis v. United States*, 136 S.Ct. 2243 (2016), Williams' Ohio Drug Trafficking conviction can no longer qualify as "controlled substance offense" because: (1) The definition of "sale" sets forth varying means of committing the O.R.C. § 2925.03(A)(1) crime of knowingly "sell" or "offer to sell" a controlled substance. Given that the offense of knowingly sell or offer to sell a controlled substance offense is broader than USSG § 4B1.2(b)'s definition of a "controlled substance offense," and given that the Ohio Drug Trafficking

7

statute criminalizes "gift" or "offer to gift" while the federal definition does not include gift or offer to gift, any prior conviction under 2925.03(A)(1) can no longer qualify as a controlled substance offense. (2) The O.R.C. § 2925.03(A)(2) offense of "knowingly prepare for shipment, ship, transport, delivery, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe a controlled substance is intended for sale or resale by the offender of another person" does not set out alternative elements, but rather alternative means of committing one offense of drug trafficking. In addition, the analysis above, as it relates to § 2925.03(A)(1), it equally applicable to the elements "sale" or "resale." § 2925.03(A)(2) criminalizes "gift" or "re-gift" while the federal definition does not. Rather than restate the whole argument, it is sufficient to argue that any prior conviction under § 2925.03(A)(2) can no longer qualify as a controlled substance offense or a predicate offense under the career offender Guideline. See *United States v. Cavazos*, 950 F.3d 329 (6th Cir. 2020).

2.      Dissenting Opinions and Legal Debates

Williams' emphasizes that legal interpretations can be subject to debate and that the existence of Sixth Circuit's decision in *United States v. Smith* does not preclude the possibility of alternative, valid interpretations. Compare *United States v. Alston*, 976 F.3d 727, 728 (6th Cir. 2020) (acknowledging [Ohio Rev. Code § 2925.03(A)(1)]'s "offer to sell" statute no longer qualifies as a controlled substance offense); with *United States v. Smith*, 960 F.3d 883, 891 (6th Cir. 2020) (holding "[Ohio Rev. Code] § 2925.03(A)(2) is a predicate 'controlled substance offense' for purposes of [U.S.S.G.] § 4B1.2(b)"); see also, *United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020) (holding "statutes that criminalize offers to sell controlled substances are too broad to categorically qualify as predicate controlled substance offenses" inasmuch as "an offer to sell is

8

properly considered an attempt to transfer a controlled substance.") This demonstrates that legal scholars and judges may hold differing views on the matter. Further, a strict and inflexible application of the Sixth Circuit's decision in *Smith* may lead to unjust outcomes in individual cases. With all due respect, the importance of considering the specific circumstances of each case and avoiding overly broad interpretations that may result in disproportionate consequences is of most importance.

    D.    Williams' Conviction Under Count 1 is a Controlled Substance Offense.

The argument above presented by the government in favor of Williams' conviction under count 1 of the indictment relies on the amendment to Section 4B1.2 of the sentencing guidelines, which supposedly makes Williams' conspiracy charge qualify as a career offender applicable offense. However, there are several counterarguments and points to consider in opposition to this position:

    1.    Legal Precedent and Circuit Split

Williams points to *United States v. Dupree* and argues that his conviction is not a controlled substance offense under the sentencing guidelines. The fact that there is a circuit split, as indicated by the disagreement between circuits, suggests that this is a complex and debatable legal issue. As such, it is important to emphasize that the law is not be settled on this matter.

    2.    Sixth Circuit Precedent - United States v. Havis

The government acknowledges that the Sixth Circuit, in *United States v. Havis*, found that certain inchoate offenses are not included in the definition of a "controlled substance offense." This precedent supports Williams' argument and demonstrates that there is a basis for contesting the categorization of his conspiracy charge. As such, the subsequent amendment to Section 4B1.2 may

9

not be sufficient to overcome the existing precedent.

3. *Kisor v. Wilke* and Judicial Deference

Williams relies on *Kisor v. Wilke*, a Supreme Court case from 2019, to support his argument. *Kisor* dealt with the level of deference given to administrative agencies' interpretations of their own regulations. The government's reliance on the Sentencing Commission's amendment requires careful scrutiny, and that judicial deference, as discussed in *Kisor*, should not be extended without a thorough examination of the legal and factual context.

4. Ambiguity in the Disputed Language

If there was a need to move disputed language from the guidelines commentary to the body of Section 4B1.2(d), it suggests a degree of ambiguity or lack of clarity in the guidelines. Such ambiguity should be resolved in Williams' favor, following the principle of lenity, which dictates that ambiguous criminal statutes should be interpreted in the defendant's favor.

Lastly, Williams has a basis for challenging the government's argument based on legal precedent, circuit split, effective date concerns, and the potential ambiguity in the disputed language. The government's reliance on the amendment may face opposition when considering the legal landscape and principles that may favor Williams.

E. The § 3553(a) Factors Strongly Weigh Against Williams' Release.

Williams objects to the government's above contention. The government's argument against early release for Williams relies on the interpretation of Section 3553(a) factors, emphasizing the serious nature of his offenses, his criminal history, and the perceived danger he poses to public safety. However, there are several points that can be argued to challenge this perspective:

10

1. Impact of Lengthy Incarceration:

Williams has already been in the criminal justice system for over two decades. One could argue that such a lengthy incarceration might not necessarily contribute to public safety and could have diminishing returns regarding rehabilitation. There should be a balance between punishment and the potential for reintegration into society.

2. Focus on Rehabilitation

The government's argument emphasizes punishment and public safety but may not give sufficient weight to the principle of rehabilitation. If there is evidence that Williams has actively sought rehabilitation and has a plan for reintegration into society, this should be considered in the context of the Section 3553(a) factors. He is not the same person as he was when he entered into prison. He is not a danger to society. First of all of his charges were non violent. He had a ten (10) year work history, and the last 4 years driving truck for Cantonese classic seafood. He helped raise his two daughters who are now college graduates. He had strong community ties, family will also support him with a place to live and he has job opportunities available when he is released. He has a release plan available also. He is now 48 years old. He has already served 80 months and he has earned 365 days off his sentence and 400 days off of halfway house for several classes and programs he has taken. He has taken business, health, drug classes, communication, social, legal and religious classes while incarcerated. He has had only one incident report in the last 6 years while incarcerated.

In conclusion, the government's argument focuses heavily on the severity of Williams' past actions and the potential danger he poses to the public based on the past. However, a comprehensive evaluation of Section 3553(a) factors should also include considerations of rehabilitation, fairness in sentencing, and the potential for positive change.

11

### IV. Conclusion

The government concludes the GR by asserting "that this Court should deny Williams' Motion for Compassionate Release because he has not established 'extraordinary and compelling' reasons, and the Section 3553(a) factors do not favor his release." See GR at 12. Williams objects. He states that for the above and foregoing reasons and the reasons previously stated in his motion for compassionate release, the Court should grant his motion for compassionate release in light of *Mathis, Norman,* and *Dupree* to avoid unwarranted sentencing disparity's, and resentence him to time served or any other relief that the Court deems appropriate.

Respectfully submitted,

Dated: November 27, 2023

*O mar.S.Williams*
OMAR S. WILLIAMS
REG. NO. 64600-060
FCI MILAN
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
MILAN, MI 48160

### CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2023, a true and correct copy of the above and foregoing Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release was sent via First Class U. S. Mail, postage prepaid, to Henry F. DeBaggis, II, Assistant U. S. Attorney at Office of the U.S. Attorney - Cleveland, Northern District of Ohio, Ste. 400, 801 Superior Avenue, W. Cleveland, OH 44113.

*O mar.S.Williams*
OMAR S. WILLIAMS

US POSTAGE PAID
$9.65
Origin: 77070
11/29/23
4800420059-05

PRIORITY MAIL®

0 Lb 3.20 Oz
RDC 03

EXPECTED DELIVERY DAY: 12/01/23

C017

SHIP TO:
801 W SUPERIOR AVE
CLEVELAND OH 44113-1829

USPS TRACKING® #

9505 5104 4804 3333 8887 95

FROM:
OMAR S. WILLIAMS
REG. NO. 64600-060
FCI MILAN
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
MILAN, MI 48160

TO:
Ms. Sandy Opacich
Clerk of Court
U. S. District Court
Northern District of Ohio
Eastern Division
801 West Superior Avenue
Cleveland, Ohio 44113

RECEIVED
DEC 05 2023
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

EP14F July 2022
OD: 12 1/2 x 9 1/2